ORIGINAL

Approved: _____
DANIELLE M. Kudla
Assistant United States Attorney

Before:   THE HONORABLE ONA T. WANG
          United States Magistrate Judge
          Southern District of New York

19 MAG 8739

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :   **SEALED COMPLAINT**
                                    :
          - v. -                    :   Violations of 18 U.S.C.
                                    :   §§ 371, 2113(a), 2
                                    :
KAMEL PICKENS,                      :   COUNTY OF OFFENSE:
                                    :   NEW YORK
                  Defendant.        :

- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

          ANTHONY CURTIN, being duly sworn, deposes and says that he is a Task Force Officer with the New York Police Department and Federal Bureau of Investigation ("FBI"), and charges as follows:

                           COUNT ONE
              (Conspiracy to Commit Bank Robbery)

          1.   From at least in or about March 18, 2019, up to and including at least June 20, 2019, in the Southern District of New York and elsewhere, KAMEL PICKENS, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, bank robbery in violation of Title 18, United States Code, Section 2113(a).

          2.   It was part and object of the conspiracy that KAMEL PICKENS, the defendant, and others known and unknown, by force and violence, and by intimidation, knowingly take, and attempt to take, from the person and presence of another, property and money and other things of value belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a).

## Overt Acts

3. In furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, was committed in the Southern District of New York and elsewhere:

a. On or about March 18, 2019, a co-conspirator ("CC-1"), not identified in the Complaint, entered a bank ("Bank-1") in the vicinity of 470 Chamberlin Avenue in Patterson, New Jersey and passed an employee of Bank-1 a note that said, in sum and substance, that she was armed and demanded money. After the employee gave CC-1 $10,000 of the Bank-1's money, CC-1 fled in a vehicle driven by KAMEL PICKENS, the defendant.

b. On or about May 1, 2019, CC-1 entered a bank ("Bank-2") in the vicinity of 2710 South Third Street in Philadelphia, Pennsylvania, and passed an employee of Bank-2 a note that said, in sum and substance, that she was armed and demanded money. After the employee gave CC-1 $1,500 of Bank-2's money in an envelope containing a GPS tracker, CC-1 fled in a vehicle driven KAMEL PICKENS, the defendant. The GPS tracker lost signal shortly after crossing the New Jersey border.

c. On or about June 12, 2019, CC-1 entered a bank ("Bank-3") located in the vicinity of 2402 Arthur Avenue in the Bronx, New York, and passed an employee of Bank-3 a note that said, in sum and substance, that she was armed and demanded money. After the employee gave CC-1 $2,200 of Bank-3's money, CC-1 fled in a vehicle driven by KAMEL PICKENS, the defendant.

d. On or about June 20, 2019, CC-1 entered a bank ("Bank-4") the vicinity of 711 Allerton Avenue in the Bronx, New York, and passed an employee of Bank-4 a note that said, in sum and substance, that she was armed and demanded money. After the employee gave CC-1 $900 of Bank-4's money, CC-1 fled in a vehicle driven by KAMEL PICKENS, the defendant.

e. On or about June 20, 2019, CC-1 entered a bank ("Bank-5") in the vicinity of 778 Yonkers Avenue in Yonkers, New York, and passed an employee of Bank-5 a note that said, in sum and substance, that she was armed and demanded money. When the employee did not comply with CC-1'S demand, CC-1 fled.

f. On or about June 20, 2019, CC-1 entered a bank ("Bank-6") in the vicinity of 766 Yonkers Avenue in the Bronx, New York, and passed an employee of Bank-6 a note that said, in sum and substance, that she was armed and demanded money. After

the employee gave CC-1 $1,500 of Bank-6's money, CC-1 fled in a vehicle driven by KAMEL PICKENS, the defendant.

(Title 18, United States Code, Section 371.)

## COUNT TWO
### (Bank Robbery)

4.    On or about June 12, 2019 in the Southern District of New York and elsewhere, KAMEL PICKENS, the defendant, and others known and unknown, by force and violence, and by intimidation, knowingly did take, and attempt to take, from the person and presence of another, property and money and other things of value belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, PICKENS obtained approximately $2,200 from a bank in the vicinity of 2402 Arthur Avenue in the Bronx, New York, by threatening a bank employee.

(Title 18, United States Code, Sections 2113(a) and 2.)

## COUNT THREE
### (Bank Robbery)

5.    On or about June 20, 2019 in the Southern District of New York and elsewhere, KAMEL PICKENS, the defendant, and others known and unknown, by force and violence, and by intimidation, knowingly did take, and attempt to take, from the person and presence of another, property and money and other things of value belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, PICKENS obtained approximately $900 from a bank in the vicinity of 711 Allerton Avenue in the Bronx, New York, by threatening a bank employee.

(Title 18, United States Code, Sections 2113(a) and 2.)

## COUNT FOUR
### (Bank Robbery)

6.    On or about June 20, 2019 in the Southern District of New York and elsewhere, KAMEL PICKENS, the defendant, and others known and unknown, by force and violence, and by intimidation, knowingly did take, and attempt to take, from the person and presence of another, property and money and other things of value belonging to, and in the care, custody, control, management, and

3

possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, PICKENS attempted to obtain money from a bank in the vicinity of 778 Yonkers Avenue in Yonkers, New York, by threatening a bank employee.

(Title 18, United States Code, Sections 2113(a) and 2.)

## COUNT FIVE
### (Bank Robbery)

7.    On or about June 20, 2019 in the Southern District of New York and elsewhere, KAMEL PICKENS, the defendant, and others known and unknown, by force and violence, and by intimidation, knowingly did take, and attempt to take, from the person and presence of another, property and money and other things of value belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, to wit, PICKENS obtained approximately $1,500 from a bank in the vicinity of 766 Yonkers Avenue in the Bronx, New York, by threatening a bank employee.

(Title 18, United States Code, Sections 2113(a) and 2.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

8.    I am a Task Force Officer in the Joint Bank Robbery / Violent Crime Task Force of the New York Police Department ("NYPD") / FBI (the "Task Force"), and I have been personally involved in the investigation of this matter. This affidavit is based upon my conversations with other law enforcement officers, my examination of reports and records prepared by law enforcement officers and others, and my involvement in this investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### The Bank Robbery Pattern

9.    Based on my conversations with other law enforcement officers and my review of law enforcement reports, I have learned, in substance and in part, the following:

4

a.    On or about March 18, 2019, at or about 10:45 a.m.,
a woman who has since been identified as CC-1, see infra ¶¶ 10-
17, entered Bank-1 in the vicinity of 470 Chamberlin Avenue in
Patterson, New Jersey and passed an employee of Bank-1 a note that
said, in sum and substance, that she was armed and demanded money.
After the employee gave CC-1 $10,000 of Bank-1's money, CC-1 fled
in a vehicle driven by a man who has since been identified as
KAMEL PICKENS, the defendant, see infra ¶¶ 10-16.

b.    On or about May 1, 2019, at or about 12:00 p.m., a
woman who has since been identified as CC-1 entered Bank-2 in the
vicinity of 2710 South Third Street in Philadelphia, Pennsylvania,
and passed an employee of Bank-2 a note that said, in sum and
substance, that she was armed and demanded money.    After the
employee gave CC-1 $1,500 of Bank-2's money in an envelope
containing a GPS tracker, CC-1 fled in a vehicle driven by a man
who has since been identified as PICKENS.    The GPS tracker lost
signal shortly after crossing the New Jersey border.

c.    On or about June 12, 2019, at or about 1:00 p.m.,
a woman who has since been identified as CC-1 entered Bank-3 in
the vicinity of 2402 Arthur Avenue in the Bronx, New York, and
passed an employee of Bank-3 a note that said, in sum and
substance, that she was armed and demanded money.    After the
employee gave CC-1 $2,200 of Bank-3's money, CC-1 fled in a vehicle
driven by a man who has since been identified as PICKENS.

d.    On or about June 20, 2019, at or about 2:50 p.m.,
a woman who has since been identified as CC-1 entered Bank-4 in
the vicinity of 711 Allerton Avenue in the Bronx, New York, and
passed an employee of Bank-4 a note that said, in sum and
substance, that she was armed and demanded money.    After the
employee gave CC-1 $900 of Bank-4's money, CC-1 fled in a vehicle
driven by a man who has since been identified as PICKENS.

e.    On or about June 20, 2019, at or about 3:28 p.m.,
a woman who has since been identified as CC-1 entered Bank-5 the
vicinity of 778 Yonkers Avenue in Yonkers, New York, and passed
an employee of Bank-5 a note that said, in sum and substance, that
she was armed and demanded money.    When the employee did not
comply with CC-1's demand, CC-1 fled.

f.    On or about June 20, 2019, at or about 3:32 p.m.,
a woman who has since been identified as CC-1 entered Bank-6 in
the vicinity of 766 Yonkers Avenue in the Bronx, New York, and
passed an employee of Bank-6 a note that said, in sum and
substance, that she was armed and demanded money.    After the

employee gave CC-1 $1,500 of Bank-6's money, CC-1 fled in a vehicle driven by a man who has since been identified as PICKENS.

### PICKENS is Identified

10. Based on my review of surveillance videos and photographs from Bank-1, Bank-2, Bank-3, Bank-4, Bank-5, and Bank-6, I have learned, in substance and part, the following:

a. The woman who robbed or attempted to rob Bank-1, Bank-2, Bank-3, Bank-4, Bank-5, and Bank-6 appeared to be a young, petite female wearing either a wig or a baseball hat and athletic clothing. The woman appeared to be the same person in each robbery or attempted robbery.

b. Surveillance videos and photographs from Bank-6 showed that the woman who robbed Bank-6 wore a Champion Athletic baseball hat and had a tattoo across her chest.

c. The same or similar Champion Athletic baseball hat is visible in surveillance videos and photographs from Bank-3, Bank-4, and Bank-5.

d. Surveillance videos and photographs from Bank-1 showed the woman driving away from Bank-1 in the passenger seat of what appeared to be a Hyundai Sonata.

e. Surveillance videos in the vicinity of Bank-3 showed the woman driving away from Bank-3 in the passenger seat of a black Chevy Equinox with an Illinois license plate numbered PA862524, driven by a dark-skinned male.

f. Surveillance videos in the vicinity of Bank-4, Bank-5, and Bank-6 showed the woman driving away from the banks in the passenger seat of a silver Chevy Equinox with a Texas license plate numbered KXX7700, driven by a dark-skinned male.

11. Based on my review of vehicle registration records, in-person interviews, and rental car agreements, I have learned, in substance and part, the following:

a. The black Chevy Equinox with an Illinois license plate numbered PA862524 and the silver Chevy Equinox with a Texas license plate numbered KXX7700 are vehicles owned by Hertz Rental Car.

b. A review of Hertz Rental car documents revealed that on or about June 12, 2019, and June 20, 2019, the two vehicles

6

were rented by an individual ("Witness-1").

c. When law enforcement officers spoke with Witness-1, he was in possession of the silver Chevy Equinox with a Texas license plate numbered KXX7700.

d. A black Champion Athletic baseball hat that appeared to match the hat worn by the woman who robbed or attempted to rob Bank-4, Bank-5, and Bank-6 was found in the silver Chevy Equinox with a Texas license plate numbered KXX7700.

e. Witness-1 stated that he had loaned the two vehicles on the dates in question to KAMEL PICKENS, the defendant, a long-time acquaintance of Witness-1. Witness-1 identified the woman in the various bank surveillance photographs as PICKEN's girlfriend, CC-1.

f. In addition to the two rental vehicles noted above, which were rented by Witness-1 on or about June 12, 2019 and June 20, 2019, a review of Hertz Rental Car documents revealed that Witness-1 had rented other vehicles during the March 2019 to July 2019 time period, including the following:

> i. On or about March 18, 2019, Witness-1 rented a Hyundai Sonata with a New York license plate numbered HRJ6085.
>
> ii. On or about May 1, 2019, Witness-1 rented a Nissan Altima with a Massachusetts license plate numbered 9GEC30.

12. A review of law enforcement databases revealed that the last known address for KAMEL PICKENS, the defendant, was in the Albany, New York region.

13. Further review of law enforcement databases and court databases revealed that KAMEL PICKENS, the defendant, was previously convicted of bank robbery whereby a young woman wearing a baseball hat would enter a bank, present a demand note referencing a weapon, and flee from the bank in a vehicle driven by PICKENS. Based on my review of the documents, the woman is not the same woman identified in this Complaint as CC-1.

14. Based on my review of license plate reader databases, I have learned, in substance and part, the following:

a. On or about March 18, 2019, a Hyundai Sonata with a New York license plate numbered HRJ6085 was recorded traveling

7

southbound on the New York State Thruway at approximately 8:36 a.m. On or about 10:46 a.m., a plate reader recorded the vehicle approximately two miles from Bank-1. As noted above, see supra ¶ 8(a), Bank-1 was robbed at or about 10:45 a.m. On or about 11:42 a.m., a plate reader recorded the vehicle traveling northbound on the New York State Thruway.

        b. On or about June 12, 2019, a black Chevy Equinox with an Illinois license plate numbered P862524 was recorded near the vicinity of Bank-3 at approximately 1:01 p.m. As noted above, see supra ¶ 8(c), Bank-3 was robbed at or about 1:00 p.m. On or about 1:07 p.m., a plate reader recorded the vehicle traveling northbound on the Bronx River Parkway.

        c. On or about June 20, 2019, a silver Chevy Equinox with a Texas license plate numbered KXX7700 was recorded traveling eastbound on I-90 towards New York City at approximately 8:41 a.m. As noted above, see supra ¶ 8(d)-(f), Bank-3 was robbed at or about 2:50 p.m., Bank-4 was attempted to be robbed at or around 3:28 p.m., and Bank-5 was robbed at or about 3:32 p.m. At or about 5:17 p.m., a plate reader recorded the vehicle traveling westbound on I-90 towards the Albany, New York region.

        15. Based on my review of traffic video footage on the Walt Whitman Bridge, I have learned, in substance and part, the following:

        a. On or about May 1, 2019, a Nissan Altima appeared to cross the Walt Whitman Bridge at approximately 12:11 p.m. traveling eastbound towards New Jersey on or about the same time that the GPS tracker from Bank-2 was recorded at the same location. As noted above, see supra ¶ 8(b), Bank-2 was robbed at or about 12:00 p.m. on that date.

        16. Based on my review of historic cell site data and call detail records for numbers associated with KAMEL PICKENS, I have learned, in substance and part, the following:

        a. Law enforcement officers obtained three numbers associated with KAMEL PICKENS. The first two cellphone numbers, Cellphone Number-1 and Cellphone Number-2, were provided by Witness-1. The third cellphone number, Cellphone Number-3, was obtained from an August 2, 2019, police incident report, following a traffic stop involving PICKENS, whereby PICKENS provided law enforcement officers with Cellphone Number-3.

        b. On or about March 18, 2019, at approximately 10:19 a.m., Cellphone Number-3 hit a cell tower approximately one-and-

a-half miles away from Bank-1. A review of all historic cell site data and call detail records on or about March 18, 2019, associated with Cellphone Number-3, show that the cellphone was recorded in the Albany, New York region at or about 8:30 p.m. on or about March 17, 2019 and recorded again in the Albany, New York region at or about 3:30 p.m. on March 18, 2019. During this time period, Cellphone Number-3 was recorded traveling through the Southern District of New York.

c.    On or about May 1, 2019, at approximately 11:29 a.m., Cellphone Number-3 hit a cell tower approximately nine miles from Bank-2.    A review of all historic cell site data and call detail records on or about May 1, 2019, associated with Cellphone Number-3, showed that the cellphone was recorded leaving the Albany, New York region at or about 9:00 a.m., traveling to or around the Philadelphia, Pennsylvania area, and returning to the Albany, New York region at or about 5:30 p.m. During this time period, the cellphone was recorded traveling through the Southern District of New York.

d.    On or about June 20, 2019, at approximately 2:40 p.m., Cellphone Number-2 hit a cell tower one block away from Bank-4. A review of all historic cell site data and call detail records on or about June 20, 2019, associated with Cellphone Number-2, showed that the cellphone was recorded leaving the Albany, New York region at or about 7:20 a.m., traveling to or around the New York City metropolitan area, and returning to the Albany, New York region at or about 6:56 p.m. During this time period, the cellphone was recorded traveling through the Southern District of New York.

17.    Based on my review of publicly available social media sites used by CC-1, I have learned, in substance and part, the following:

a.    CC-1's Facebook photographs when compared to the surveillance photographs from Bank-1, Bank-2, Bank-3, Bank-4, Bank-5, and Bank-6 appear to show the same person.

b.    In one of CC-1's Facebook photographs, CC-1 appears to be wearing the same sweatshirt shown in the surveillance photographs from Bank-3.

c.    In another one of CC-1's Facebook photographs, CC-1 displayed a tattoo across her chest that appears to be similar to or match the tattoo shown in the surveillance photographs from Bank-6.

9

Federal Deposit Insurance Corporation

18. From my review of publicly available materials, as well as my training and experience as a Task Force officer and a member of the Task Force, I know that, at all relevant times, the deposits of Bank-1, Bank-2, Bank-3, Bank-4, Bank-5, and Bank-6 were insured by the Federal Deposit Insurance Corporation.

WHEREFORE, the deponent respectfully requests that KAMEL PICKENS, the defendant, be imprisoned or bailed, as the case may be.

ANTHONY CURTIN
Joint Task Force Officer for the New York Police Department and Federal Bureau of Investigation

Sworn to before me this
17th day of September, 2019

THE HONORABLE ONA T. WANG
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

10